

**Entered on Docket**
**February 10, 2016**
EDWARD J. EMMONS, CLERK
U.S. BANKRUPTCY COURT
NORTHERN DISTRICT OF CALIFORNIA

**The following constitutes
the order of the court. Signed February 10, 2016**

*Charles Novack*
**Charles Novack
U.S. Bankruptcy Judge**

# UNITED STATES BANKRUPTCY COURT
## NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| In re: <br> KEVIN FRANCIS BARRETT, <br>     Debtor. | Case No. 14-43516 CN <br> Chapter 7 |
| KEVIN F. BARRETT, <br>     Plaintiff, <br> vs. <br> UNITED STATES DEPARTMENT OF EDUCATION DIRECT LOAN SERVICING CENTER, RESURGENT CAPITAL SERVICES AND LVNV FUNDING LLC, <br>     Defendants. | Adversary No. 14-4161 CN <br> **MEMORANDUM DECISION AFTER TRIAL** |

On January 6, 2016, this court conducted a trial in the above adversary proceeding. All appearances were made on the record. Plaintiff Kevin Barrett ("Barrett") seeks to discharge more than a quarter million dollars in student loan debt under Bankruptcy Code § 523(a)(8) on the ground that payment would constitute an undue hardship. The United States Department of Education ("DOE") contends that Barrett has not met the onerous *Brunner* elements, and that he therefore cannot discharge his student debt. For the reasons stated below, Barrett is entitled to a full discharge of his student loan debt. The following constitutes this court's findings of fact and conclusions of law under Federal Rule of Bankruptcy Procedure 7052.

# THE FACTS

Barrett is 56 years old and an attorney licensed to practice in the State of California. He is not married, and has no children or other dependents. Barrett filed his Chapter 7 bankruptcy on August 26, 2014, and received his Chapter 7 discharge on December 10, 2014. Barrett, who represented himself herein, filed this adversary proceeding on November 3, 2014 against several defendants, including the DOE. Barrett dismissed defendants Resurgent Capital Services and LVNV Funding by stipulation, and proceeded to trial against only the DOE.

Barrett seeks to discharge $264,056.41 in consolidated student loan debt owed to the DOE.[1] These loans helped to finance a) his college education (he received a B.S. in business administration from San Diego State University in 1982), b) his law school education (he received a J.D. from the University of San Diego School of Law in 1987), and c) his business school education (he received an M.B.A. from UCLA in 1995). Barrett has been a practicing attorney since 1988. Despite these educational achievements, he has had, to say the least, an uneven legal career.

After receiving his law degree, Barrett worked for an insurance defense firm in Los Angeles until 1993, when he left voluntarily to attend UCLA's graduate business school. After receiving his MBA, Barrett returned to the practice of law by doing "temp" legal work in 1995 and 1996. In the Spring of 1996, Barrett was hired by the Miller, Mailliard & Culver firm in Southern California as an associate to do securities registration work. Miller, Mailliard dissolved in 1997, and he then worked for the Evans, Hendrickson firm for a year doing similar securities work. That firm dissolved in 1998 or 1999. Barrett then was hired by Davis, Wright & Tremaine, a large Seattle based firm. Barrett worked in its Sacramento, California office doing securities registration work. Davis Wright terminated him after one year, and Barrett then moved to New York City to find legal work. In New York, Barrett again resorted to "temp" legal work in the securities field. He never found permanent work, and he moved to Oakland, California in 2001 to reduce his living expenses and be closer to family.

---

[1] This amount is as of January 6, 2015, and interest accrues at $38.89 per day. If the DOE retains a collection agency to pursue this debt, the amount due will increase by a collection fee of $64,195.61.

For the next several years, Barrett was an independent contractor for a series of New York law firms (again doing securities registration work) until that work ended in 2005. He was unemployed for several months until he started doing independent contractor securities work for a Southern California law firm in 2006. Sometime in 2006, Barrett moved to Colorado in search of more permanent legal work and to reduce his living expenses. Barrett sustained himself by continuing his independent contractor work for the Southern California law firm. Despite considerable effort, Barrett never received an offer from a Colorado law firm, and his work with the Southern California law firm ended in the summer of 2006. He was unemployed for the next several months.

Barrett's income tax returns for the years while working as an independent contractor show a modest income. His 2005 federal income tax return states that his adjusted gross income (i.e., his income after deducting his business costs) was $37,115, and that he owed the IRS $3,011 in taxes. His 2006 federal income tax return states that his adjusted gross income was $39,249, and that he owed the IRS $8,302 in taxes.

In February 2007, Barrett was hired by the Sacramento, California office of the Bullivant, Houser & Bailey law firm. Barrett was retained to do securities registration work at an annual salary of $165,000. This job barely lasted a year, as the onset of the "Great Recession" dramatically reduced the need for his "PIPE" (private investment/public equity) securities work.

Over the next two and one-half years, Barrett supported himself with a smattering of independent contractor legal work and unemployment insurance. His 2009 federal tax return indicates that he had negative $1,962 in net business income, and negative $1,372 in adjusted gross income. His 2010 tax return shows $12,434 in net business income and an adjusted gross income of $9,617.[2]

In May 2011 Barrett was hired by the Gilbert Kelly Crowley & Jennett law firm in San

---

[2] On cross examination, the DOE focused on Barrett's gross business receipts for these tax years (2005, 2006, 2009 and 2010) to demonstrate that Barrett was generating gross annual income of anywhere from a low of $27,441 (2009) to a high of $79,246 (2006). The DOE did not question, however, the propriety of the business expenses that Barrett incurred and deducted from his business income on Schedule C of his federal tax returns.

3

MEMORANDUM DECISION AFTER TRIAL

Francisco to do insurance defense work at an annual salary of $98,000. This job lasted until August 2013, when Gilbert Kelly terminated him as part of the firm's downsizing. Since then, Barrett has done independent contractor work representing applicants before the Social Security Disability Appeals board. He is paid $35 per hour for this work. This work has generated little income. His 2014 federal tax return shows a negative $138 in net business income, and an adjusted gross income of $5,218. His 2015 federal tax return shows net business income of $8,238, and an adjusted gross income of $7,665. Barrett testified that he has made significant but unsuccessful efforts to generate legal work (or secure employment) since being terminated by Gilbert Kelly. He has sought to build a legal practice through extensive networking efforts, seminar participation and resume mailing, and he has demonstrated a willingness to enter new areas of law in order to make a living. His efforts have not been fruitful, and he has little confidence that this will change. Barrett attributes his employment problems to his age. He believes that he will work for another ten years.

Barrett lives a spartan life. His Bankruptcy Schedule I indicates that he is a self-employed attorney generating $700 in gross income, which he supplements with $175 in food stamps each month. His Bankruptcy Schedule J states that he has $1775 in monthly living expenses, including $750 for rent (he shares an Alameda, California house with two roommates) and $220 for food and housekeeping. Barrett's monthly expenses exceed his monthly income by $875. Barrett has pared his personal and business expenses by, *inter alia*, discontinuing his malpractice insurance and his New York, D.C., Colorado, Washington, Idaho, and Utah state bar dues.[3] Barrett spends little, if anything, for recreation. He has been driving the same car since 2003, and has no savings or retirement accounts. Despite this frugal lifestyle, Barrett is behind on his utilities and car insurance payments.[4]

---

[3] Barrett maintains his law office in his rented residence.

[4] Barrett's "First Supplemental Responses" to the DOE's first set of interrogatories also lists his monthly personal expenses. These responses indicate that he is renting the Alameda residence for $2,000/month, and has two roommates, who pay collective rent of $1625. Barrett, however, pays all "utilities, wi-fi and other household expenses." His Supplemental Response provide that his monthly personal and business expenses (excluding rent, but including utilities and certain household supplies) total $1,324. See DOE Exhibit "P." These monthly expenses exceed his monthly income during the same period of time. See DOE Exhibit "U."

Barrett also has no assets that he could liquidate to repay his DOE debt. He does not own any real estate, and his Bankruptcy Schedule B indicates that his only marketable assets are five shares of Marriott stock valued at $80.00.

Barrett borrowed $74,333.00 to finance his education. These loans took the form of Stafford subsidized and unsubsidized loans, a National Direct Student loan, and SLS Supplemental loans. His first student loan dates from October 30,1979, and he received his last student loan on October 20, 1994. Barrett actively managed his student loan debt. All told, Barrett (and his family) made more than twelve years worth of monthly student loan payments exceeding $40,000.[5] He fully satisfied three of his smaller Stafford Subsidized loans that he incurred to attend law school, sought and obtained payment deferrals or forebearances when necessary, and consolidated his subsidized and unsubsidized loan balances in 2004 with the DOE to help manage the debt.[6] The evidence indicates that Barrett made loan payments when he was employed by a law firm and had steady income, and made irregular payments when he was self-employed.

Barrett has paid $16,252.17 to the DOE since he consolidated his student loan debt in 2004, and his last payment was made on July 25, 2013. As of January 6, 2016, Barrett's DOE student loan balance was $264,056.41. Barrett's consolidated DOE loans carry a 6.6% interest rate, and the monthly interest alone is $1,166.

Barrett has not, however, pursued one of the DOE's income contingency repayment plans. If Barrett's income remains at its 2015 level, the DOE contends that Barrett will not be required to make monthly payments under the DOE's Income-Based Repayment (the "IBR") plan or its new Revised Pay As You Earn Repayment (the "Repay") plan. The Repay plan will require that Barrett first make two consecutive monthly payments of at least $5.00. The value of the Repay plan is that the loan will no longer be in default. Both plans last at least twenty years[7], and if completed, the remaining debt will be forgiven. Using Barrett's 2015 tax return as its guide, the DOE estimates that

---

[5] See Barrett Exhibits "1" and "2."

[6] The DOE became the holder of his student loan debt when Barrett consolidated his student loan debt in 2004.

[7] See DOE Exhibit "M."

MEMORANDUM DECISION AFTER TRIAL

$703,228.08 in student loan debt will be forgiven under the IBR plan, and $456,638.19 will be forgiven under the Repay plan. Barrett does not anticipate working for another 25 years, and he is concerned with the tax implication of the significant debt forgiveness provisions under either plan.[8]

THE LAW

Bankruptcy Code § 523(a)(8) provides that an educational loan cannot be discharged "unless excepting such debt from discharge under this paragraph would impose an undue hardship on the debtor and the debtor's dependents…" 11 U.S.C. § 523(a)(8). In *In re Pena*, 155 F.3d 1108, 1112 (9th Cir. 1998), the Ninth Circuit adopted the "undue hardship" test established in *Brunner v. New York State Higher Educ. Servs. Corp.,* 831 F.2d 395 (2nd Cir. 1987). Under the *Brunner* test, a finding of "undue hardship" requires a debtor to establish, by a preponderance of the evidence, that (1) Barrett cannot maintain, based on current income and expenses, a "minimal" standard of living for himself if forced to repay the loans; (2) additional circumstances exist indicating that this state of affairs is likely to persist for a significant portion of the repayment period of his student loans; and (3) Barrett has made good faith efforts to repay the loans. *Brunner, supra,* at 396 (2d Cir. 1987).

Barrett satisfies the first *Brunner* element. This element requires that Barrett establish that he cannot maintain a minimal standard of living based on his current income and expenses. *See Rifino v. United States (In re Rifino)*, 245 F.3d 1083, 1088 (9th Cir. 2001). Barrett has a minimal standard of living, and he cannot maintain it. His monthly expenses exceed his income, and he is behind on his utilities and cannot afford malpractice insurance. A student loan payment of any amount would simply send him deeper into insolvency.

Barrett faces a more difficult challenge in satisfying the second element of the *Brunner* test. The Ninth Circuit recognizes "that courts have found it difficult to predict future income. Consequently, courts have required debtors to present "additional circumstances" to prove that their

---

[8] The DOE's Exhibit "E" is Barrett's "Federal Direct Consolidation Loan/Application and Promissory Note." The application required Barrett to chose a repayment plan, and it indicates that Barrett chose the "Income Contingent" plan. Despite this, the parties apparently agree that Barrett never applied for an income contingent payment plan. Moreover, neither party testified regarding the remaining term of the consolidated loan, and the Promissory Note portion of Exhibit E also does not expressly address this. Given the length of the DOE's income-driven repayment plans (see DOE Exhibit "M"), the court presumes that Barrett's DOE loans have at least a twenty year term.

6

**MEMORANDUM DECISION AFTER TRIAL**

Case: 14-04161   Doc# 61   Filed: 02/10/16   Entered: 02/10/16 15:06:00   Page 6 of 10

present financial situation will persist well into the future, preventing them from making payments through a substantial portion of the loans' repayment period. . . . These "additional circumstances" are meant to be objective factors that courts can consider when trying to predict the debtor's future income; the debtor does not have a separate burden to prove "additional circumstances," beyond the inability to pay presently or in the future, which would justify the complete or partial discharge of her student loans." *Nys v. Educ. Credit Mgmt. Corp. (In re Nys)*, 446 F.3d 938, 945 (9th Cir. 2006). Moreover, this court cannot "presume that a debtor's present inability to make loan payments will continue indefinitely." *Id.* at 946. Instead, Barrett must introduce evidence establishing "circumstances, beyond the mere current inability to pay, that show that the inability to pay is likely to persist for a significant portion of the repayment period. The circumstances need be 'exceptional' only in the sense that they demonstrate insurmountable barriers to the debtor's financial recovery and ability to repay." [citation omitted]. *Id.* These additional circumstances include 1) serious mental or physical disability affecting the debtor's employment or advancement; 2) a debtor's obligation to care for dependents; 3) lack of, or severely limited education; 4) poor quality of education; 5) lack of usable or marketable job skills; 6) underemployment; 7) maximized income potential in the chosen educational field; and no other more lucrative job skills; 8) limited number of years remaining in the debtor's work life to allow payment of the loan; 9) age or other factors that prevent retraining or relocation as a means for payment of the loan; 10) lack of assets, whether or not exempt, which could be used to pay the loan; 11) potentially increasing expenses that outweigh any potential appreciation in the value of the debtor's assets and/or likely increases in the debtor's income; or 12) lack of better financial options elsewhere. *Id.* at 947. The *Nys* court noted that "the determinative question is whether the debtor's inability to pay will, given all we know about the salient features of [his] existence, persist throughout a substantial portion of the loan's repayment period." *Id.* at 946.

     Barrett is a relatively healthy 56 year old attorney with two graduate degrees. He has been practicing law since 1988, and briefly held two well-paying associate positions. He intends to work for another ten years, and has no dependents. At first glance, Barrett would not be a good candidate to satisfy this *Brunner* element. Yet, the preponderance of the evidence demonstrates that Barrett's dismal circumstances will persist. Barrett's law firm employment history has been irregular at best,

7

MEMORANDUM DECISION AFTER TRIAL
Case: 14-04161   Doc# 61   Filed: 02/10/16   Entered: 02/10/16 15:06:00   Page 7 of 10

and he believes that no firm will hire him because of his age.[9] Barrett has arrived at this conclusion after making substantial efforts to find a law firm position. He also has shown little ability in developing a solo practice, and he has no assets he can liquidate to pay his loans. Given this, Barrett argues that he will not have the income to repay any portion of his DOE debt in the remaining years left on this obligation.

This court finds him to be a credible witness on this point. Simply, a law degree and years of practice do not equate to a living wage, and the DOE does not suggest that he will be more successful if he abandons his legal career. In addition, if Barrett has been unable to establish a viable law practice after 28 years of practice, it is a fool's errand to presume that his 29th or 30th year will be any different. "Additional circumstances" are, as described by the *Nys* court, those that a debtor "cannot reasonably change." *Id*. at 946, ft. 7. No one has suggested what changes Barrett should make to become a prosperous attorney at this stage in his career.

Finally, Barrett has made a good faith effort to repay his loans. "Good faith is measured by the debtor's efforts to obtain employment, maximize income, and minimize expenses" (internal quotation marks omitted). *In re Mason*, 464 F.3d 878, 884 (9th Cir. 2006). Courts examine several factors in making this determination, including whether the debtor made any payments before filing for bankruptcy; whether the debtor sought deferments or forebearances; the timing of the debtor's attempt to have the loan discharged; and whether the debtor's financial condition resulted from factors beyond his reasonable control. *See Roth v. Educ. Credit Mgmt. Corp. (In re Roth)*, 490 B.R. 908, 917 (Bankr. 9th Cir. 2013). "Courts will also consider a debtor's effort - or lack thereof - to negotiate a repayment plan, although a history of making or not making payments is, by itself, not dispositive." *In re Mason, supra,* at 884.

As discussed above, Barrett's efforts to obtain employment, maximize income, and minimize

---

[9] Barrett testified on this point, and also sought to introduce into evidence several law firm employment ads found on craigslist (Barrett Exhibits "12" and "13"). The DOE's hearsay objection to these exhibits is sustained. The DOE's hearsay objection to Barrett Exhibit "15" is overruled, as this exhibit is not being offered for the truth of the matter stated therein, but instead demonstrates Barrett's ongoing efforts to locate clients. The DOE's also objects to the introduction of Barrett's medical records in Barrett Exhibit "21" on the ground that they are hearsay The court sustains this objection.

8

MEMORANDUM DECISION AFTER TRIAL

expenses are unassailable. The DOE does not question that his legal degree is his best option to make a living, and Barrett has cris-crossed the country, passed several bar exams, extensively networked and sent out hundreds of resumes in an effort to obtain legal work, either as an employee or as an independent contractor. His monthly business and personal expenses are, to say the least, modest, and despite his simple lifestyle, he still is behind on his utilities and car insurance. In addition, Barrett has made more than twelve years of student loan payments[10], actively managed his student loan debt, and paid more than $16,000 towards his consolidated DOE obligations. While the DOE correctly argues that this court must consider Barrett's failure to apply for one its income-based repayment plans, such inaction is insufficient, standing alone, for this court to find against him on this final *Brunner* factor (particularly where no payment is forecast). *See*, *In re Roth, supra*, at 919. Given Barrett's other good faith efforts, his failure to pursue an income contingent repayment plan is not damning. An income contingent payment plan is not the functional equivalent of a Chapter 7 discharge, particularly given the possibility that a debtor may face a substantial tax liability when the student debt is forgiven.

Barrett has demonstrated by a preponderance of the evidence that he is entitled to discharge his student loan debt. This court will therefore enter judgment in his favor.

**\* \* \* END OF ORDER \* \* \***

---

[10] See Exhibit "1."

**COURT SERVICE LIST**

Kevin F. Barrett
621 Arlington Isle
Alameda, CA 94501

Other Recipients are ECF participants